STATE *v.* McKEE.

STATE v. CLARENCE McKEE, JR.

(Filed 20 January, 1967.)

**1. Bastards § 8—**

In prosecutions under G.S. 49-2 it is the accepted practice to submit issues to the jury, treated as a special verdict, but the issues submitted must necessarily present to the jury inquiries as to all the facts necessary to determine defendant's guilt, and also, if challenged by defendant, the fact that the prosecution was commenced within the time limited.

**2. Bastards § 3—**

Where the paternity of the child is not adjudicated within three years of its birth the State must show, in a prosecution begun after the three year period, that defendant made payments for the child's support within three years after its birth, and that warrant was issued within three years of the date of the last payment.

**3. Bastards § 8—**

In a prosecution under G.S. 49-2 begun more than three years after the child's birth, without any judicial determination of paternity, the issues submitted to the jury must include predicate for a finding that defendant made payments for support of the child within three years of its birth, as well as a finding that defendant made such payments within three years prior to the issuance of the warrant, and when the issues fail to present one of these essentials they are insufficient to support conviction.

APPEAL by defendant from *McLaughlin, J.,* May 1966 Criminal Session of ROWAN.

Prosecution under G.S. 49-2 *et seq.*

Defendant was tried and convicted in the Rowan County Court on February 22, 1966, upon a warrant issued on December 31, 1965, which charged that, on or about December 1, 1965, and prior thereto, defendant did wilfully and unlawfully refuse to support his illegitimate child, Alicia Louise Hunter, born on February 23, 1960, to

Dorothy Louise Hunter. From the judgment imposed, defendant appealed to the Superior Court, where he was tried *de novo*. Prosecutrix and defendant were the only witnesses.

The evidence for the State tended to show: As a result of sexual relations with defendant in June 1959, Dorothy Louise Hunter became pregnant and gave birth to the child, Alicia, on February 23, 1960. Dorothy informed defendant immediately of her pregnancy. He told her that he wanted to go to college and could not get married until he graduated. He agreed, however, that he would support the child, giving her what he could until he got out of school. Defendant and his family paid the hospital bill incident to the birth of the child. During the first year of her life, defendant sent Alicia clothing costing between $10.00 and $15.00. Until June 1963, she still considered him her boyfriend. She went out with him and, during that time, he gave her things for the support of Alicia. In August 1963, he sent her a box of clothing. Once, prior to August 1963, he gave Dorothy money "from hand to hand." He sometimes took the baby out on his own and got her things. At intervals, Dorothy demanded of defendant more support for the child. Once she threatened to take out a warrant for him but desisted, upon his promise to do more for Alicia. He said "that he expected to do the right thing . . . that he was going to do more." At Thanksgiving 1964, defendant and prosecutrix spent the night together at the Holiday Inn in Greensboro. At that time, he gave her $10.00 for Alicia. Thereafter, he furnished no support whatever. In October 1964, Dorothy wrote defendant a letter demanding support. The last time she asked him for money was just before she took out the warrant.

The testimony of defendant, a schoolteacher, tended to show: He has never "owned up" to being the father of Alicia, but he has never denied it. He said:

> "I have not at any time since the birth of the child given her (Dorothy) anything for the support of the child. . . . I told her I would do the best I could and if I had anything I would give it to her. . . . I told her (whenever she would ask for money) that I didn't have anything to give her. . . . I assume that I am Alicia's father."

Defendant admitted that on Labor Day 1964 he spent the night with prosecutrix at the Holiday Inn in Greensboro, but he denied that he gave her money at that time or at any other time.

The court submitted issues to the jury which were answered as follows:

"1. Is the defendant, Clarence McKee, Jr., the father of the child, Alicia Louise Hunter, born February 23, 1960, begotten upon the body of Dorothy Louise Hunter, as alleged in the warrant?
ANSWER: Yes.

"2. Did the defendant, Clarence McKee, Jr., make any payments for the support of Alicia Louise Hunter within three years prior to December 31, 1965?
ANSWER: Yes.

"3. If so, is the defendant, Clarence McKee, Jr., guilty of wilfully neglecting, failing and refusing to support and maintain the said child, Alicia Louise Hunter, after due and lawful demand was made upon him, prior to the warrant being sworn and served, as alleged in the warrant?
ANSWER: Yes."

Defendant tendered the following interrogatory, which the court declined to submit:

"Did the defendant make any payments for the support of Alicia Hunter within 3 years after the birth of said child?
ANSWER: ......................."

Upon the foregoing verdict, the court entered judgment that defendant be imprisoned for 6 months, and he appealed.

*T. W. Bruton, Attorney General; Ralph Moody, Deputy Attorney General; and Andrew A. Vanore, Jr., Staff Attorney, for the State.*
*Graham M. Carlton for defendant.*

SHARP, J.   The submission of interrogatories, or issues, in criminal prosecutions under G.S. 49-2 *et seq.* is now the approved practice with us, the questions and answers being treated as a special verdict. *State v. Ellis,* 262 N.C. 446, 137 S.E. 2d 840. The issues submitted, however, must necessarily present to the jury inquiries not only as to all the facts necessary to determine defendant's guilt but also to establish the right of the State to prosecute him if defendant's evidence challenges this right.

The wilful failure to support an illegitimate child less than 18 years of age is, by G.S. 49-2, made a misdemeanor. G.S. 49-4, however, permits the State to prosecute the putative father within the following periods *"and not thereafter"*:

"1.  Three years next after the birth of the child; or

"2.  Where the paternity of the child has been judicially de-
termined within three years next after its birth, at any
time before the child attains the age of eighteen years; or

"3.  Where the reputed father has acknowledged paternity of
the child by payments for the support thereof within three
years next after the birth of such child, three years from
the date of the last payment whether such last payment
was made within three years of the birth of such child or
thereafter: Provided, the action is instituted before the
child attains the age of eighteen years."

The illegitimate child, Alicia, was born February 23, 1960. This
prosecution was instituted December 31, 1965. Thus, it was not be-
gun within three years next after her birth. Neither was her pa-
ternity judicially determined within that time. In order to maintain
this prosecution, therefore, the State must meet the requirements
of G.S. 49-4(3), *supra,* and prove not only that defendant made pay-
ments for the child's support within the three years next after her
birth but also that the warrant was issued within three years from
the date of the last payment.

Defendant, although he "assumes" that he is the father of
Alicia, categorically denies that he has ever, at any time, contrib-
uted anything whatever to her support — neither money, clothes,
food, nor anything else. In other words, he relies upon the State's
failure to prosecute him earlier to relieve him of his obligation to
support Alicia. If the jury should find the facts in accordance with
defendant's testimony, his contention is correct and the action can-
not be maintained. On the other hand, if the jury finds the facts in
accordance with the prosecutrix's testimony, defendant made pay-
ments for the child's support during the first three years of her life
and the warrant was issued within three years from the date of his
last payment, $10.00 at Thanksgiving of 1964. The verdict, how-
ever, leaves unanswered the question whether defendant made any
support payments for the child during the first three years of its
life. The issue tendered by defendant would have established this
material fact. A special verdict is defective if a material finding is
omitted. "Such verdict must find sufficient facts to permit of the
conclusion of law upon which the judgment rests." *State v. Ellis,*
*supra* at 451, 137 S.E. 2d at 845.

Defendant's assignment of error based on his exception to the
failure of the court to submit the tendered issue is sustained. There
must be a

New trial.