STATE OF NORTH CAROLINA v. ISTIVAN CLEVONDON DOUGLAS

No. COA08-1287

(Filed 19 May 2009)

**Jury— verdict form—questions—elements of crime—finding of guilt not included**

The jury did not fulfill its constitutional responsibility to make an actual finding of defendant's guilt where the verdict form required only findings on the essential elements of the charges and nothing more.

Appeal by defendant from judgment dated 16 January 2008 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 25 March 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Patrick S. Wooten, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant.*

BRYANT, Judge.

Istivan Clevondon Douglas (defendant) appeals from a judgment entered upon a jury verdict finding him guilty of one count of possession with intent to sell and/or deliver cocaine, one count of selling cocaine, and defendant's plea of guilty to attaining the status of an habitual felon. For the reasons stated herein, we must grant defendant a new trial.

*Facts*

Defendant was arrested pursuant to a warrant on 12 February 2007. On 19 February 2007, a Cabarrus County Grand Jury indicted defendant on one count of possession with intent to sell and/or deliver cocaine, one count of sale of crack cocaine, and one count of delivery of crack cocaine. On 12 March 2007 defendant was indicted for attaining the status of an habitual felon. On 31 December 2007, the same Grand Jury returned a superceding indictment in the habitual felon case.

These cases were tried together at the 14 January 2008 Criminal Session of Cabarrus County Superior Court before Superior Judge W. Erwin Spainhour. On 16 January 2008 the jury returned verdicts

related to the charges. Defendant pled guilty to attaining the status of an habitual felon. The offenses were consolidated for judgment and on 16 January 2008, Judge Spainhour sentenced defendant to a term of imprisonment for a minimum of 120 months and a maximum of 153 months. The State voluntarily dismissed the delivery charge with leave to reinstate. Defendant appealed.

An Order of Appellate Entries was entered on 16 January 2008. The court found defendant indigent and noted that defendant waived appellate counsel. On 25 April 2008, Judge Spainhour entered an amended Order for the Appellate Defender to represent defendant on appeal. Defendant filed a *pro se* motion in Cabarrus County Superior Court which was denied on 11 June 2008 by Judge Spainhour. On 25 June 2008, the North Carolina Court of Appeals denied appellate counsel's motion to withdraw based on defendant's desire to proceed *pro se.* On 26 June 2008, the Court of Appeals granted the State's motion to strike defendant's *pro se* record on appeal and brief, and ordered defendant's appointed appellate counsel to file a proper settled record on appeal. On 28 September 2008, the North Carolina Supreme Court denied defendant's *pro se* petition for *writ of certioari* to review the Court of Appeals' June 25 and 26, 2008 Orders.

The underlying facts of this case are as follows: On 23 January 2007 Officer Eugene Ramos was working as an undercover narcotics officer with the Concord Police Department; Officer Ramos was a new member of the department and was assigned to the narcotics unit because he was not from the area and was unknown to members of the community. At approximately 3:00 pm, Officer Ramos departed to the Sizetown area in an unmarked tan Honda Accord with twenty dollars in special funds to attempt to make an undercover drug buy. Officer Ramos noticed two men standing on a porch at 27 Flow Street. Officer Ramos showed the men the twenty dollar bill and was directed to circle the block by one of the two men. Once he drove around the block the other man, later identified as defendant, approached the car and gave Officer Ramos a small white rock substance in exchange for the twenty dollar bill. Officer Ramos then left the area.

Officer Ramos brought the substance to Officer Brian Kelly. Officer Ramos was not familiar with defendant nor did he recognize him from photo books he reviewed prior to the undercover operation. Officer Ramos did recall that defendant had a disabled hand. Defendant was arrested on 12 February 2007. In the courtroom,

Officer Ramos identified defendant as the man who sold him the crack cocaine.

During jury instructions, the trial court charged the jury on the elements of possession with intent to sell or distribute cocaine and sale of cocaine pursuant to pattern jury instructions 260.15 and 260.21. The verdict form submitted to the jury read in relevant part:

We, the jury, return as our unanimous verdict that the defendant is:

ISSUE 1:

Did the defendant possess cocaine, a controlled substance, with the intent to sell or deliver it?

ANSWER: _____

. . .

ISSUE 3:

Did he defendant sell cocaine, a controlled substance, to Officer Eugene Ramos?

ANSWER: _____

The jury wrote the word "yes" in the blank beside the word "ANSWER" for both Issues 1 and 3 on the verdict form and signed and dated the form. The form did not contain a designation for entering a verdict of guilty or not guilty. At no time did the jury submit a verdict of guilty or not guilty to the charges of possession with intent to sell or deliver cocaine and sale of cocaine. After the jury returned their answers on the verdict form, the trial court polled the jury as follows:

THE COURT: Members of the jury, your foreperson has returned as your unanimous written verdict . . . as follows:

*We the jury return as our unanimous verdict that the defendant is, as to Issue Number 1, did the defendant possess cocaine, a controlled substance with the intent [to] sell or deliver it.*

Your answer was yes.

*As to Issue 3, did the defendant sell cocaine, a controlled substance, to Officer Eugene Ramos?*

Your answer was yes.

**STATE v. DOUGLAS**

[197 N.C. App. 215 (2009)]

THE COURT: Is this your verdict, so say all of you?

(Unanimous indication given.)

THE COURT: Ladies and gentlemen of the jury, if this was your individual verdict, each you [sic] of your individual verdict while you were voting in the jury room, please indicate by raising your hand.

THE COURT: Let the record show I counted all 12 hands.

THE COURT: If it remains your verdict at this very moment, if each of you would individually raise your hand.

THE COURT: I counted all 12 hands.

Defendant appeals.

---

On appeal, defendant contends: (I) defendant is entitled to a new trial because the trial court submitted, the jury returned, and the trial court accepted unconstitutional true special verdicts that do not support the judgment; (II) defendant is entitled to a new trial because the trial court erroneously admitted the State's inadmissible evidence about reputation of defendant's neighborhood as being drug-infested in violation of *State v. Williams*; and (III) defendant's convictions must be vacated because there is insufficient evidence he possessed and sold a controlled substance.

*I*

Defendant argues he is entitled to a new trial because true special verdicts were erroneously submitted, returned, and accepted. We agree.

"A verdict is the unanimous decision made by the jury and reported to the court. It is a substantial right . . . ." *State v. Hemphill*, 273 N.C. 388, 389, 160 S.E.2d 53, 55 (1968). "Verdicts and judgments in criminal actions should be clear and free from ambiguity or uncertainty. The enforcement of the criminal law and the liberty of the citizen demand exactitude." *State v. Rhinehart*, 267 N.C. 470, 481, 148 S.E.2d 651, 659 (1966). "A jury verdict must unambiguously state that the defendant has been found guilty of a crime." *State v. Hobson*, 70 N.C. App. 619, 620, 320 S.E.2d 319, 319 (1984).

"A special verdict is a common law procedural device by which the jury may answer specific questions posed by the trial judge that are separate and distinct from the general verdict." *State v. Blackwell*,

361 N.C. 41, 47, 638 S.E.2d 452, 456 (2006). In North Carolina, special verdicts are a widely accepted method of submitting aggravating factors to a jury. *Id.* A "true" special verdict is where "the jury only makes findings on the factual components of the essential elements alone." *Id.* "True" special verdicts are not allowed in criminal cases because such verdicts do not allow the jury to fulfill its constitutional responsibilities to determine whether defendant is guilty or not guilty. "[T]his practice violates a criminal defendant's Sixth Amendment right to a jury trial." *Id.* at 47, 638 S.E.2d at 457.

The jury's constitutional responsibility requires the jury to "apply the law to th[e] facts and draw the ultimate conclusion of guilt or innocence." *United States v. Gaudin*, 515 U.S. 506, 514, 132 L. Ed. 2d 444, 452 (1995). "The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action . . .; it requires an actual jury finding of guilty." *Sullivan v. Louisiana*, 508 U.S. 275, 280, 124 L. Ed. 2d 182, 190 (1993). Thus, a criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Gaudin*, 515 U.S. at 510, 132 L. Ed. 2d at 449.

In the instant case, the jury did not fulfill its constitutional responsibility to make an actual finding of defendant's guilt. The verdict form in the instant case only required the jury to make factual findings on the essential elements of the charged crimes and nothing more. Thus, defendant's Sixth Amendment right to a jury trial was violated because the jury did not make an actual finding of defendant's guilt. Here, the jury verdict was a true special verdict in violation of *Gaudin* and *Blackwell* and could not be the basis for the judgment entered against defendant.

The State argues the verdict form submitted to the jury merely omits the words "not guilty" and, based on the reasoning in *State v. Hicks*, 86 N.C. App. 36, 356 S.E.2d 595 (1987), omission of the words "not guilty," is not error when the jury instructions are correct and the jury is polled. However, *Hicks* is inapplicable to the present case because even though it involved the use of a verdict form that was "not preferred,"[1] the form nevertheless required the jury to make an actual finding of guilt.

In *Hicks*, the verdict form required the jury to determine whether the defendant was "Guilty of felonious conspiracy to commit felo-

---

1. Verdict form used by the trial court that only used the word "guilty" not preferred; use of "not guilty" on verdict form is preferred.

nious Breaking and Entering" and "Guilty of felonious Conspiracy to commit felonious Larceny." *Id.* at 43, 356 S.E.2d at 599. The verdict form included the word "guilty" but failed to include the words "not guilty." *Id.* However, the verdict form used and the trial court's instruction to the jury required the jury to make an actual and ultimate determination of the defendant's guilt. *Id.* After considering the trial court's instructions to the jury with respect to the permissible verdicts the jury could return, as well as each juror's affirmation when polled that the verdict of *guilty* was his or her verdict, this Court affirmed the conviction in *Hicks* despite the trial court's failure to include the words "not guilty" on the verdict form. *Id.*

Unlike the jury in *Hicks*, the jury in the instant case was not required to reach an ultimate determination regarding defendant's guilt or innocence. Here, the verdict form failed to include the words "guilty" or "not guilty." The trial court's charge to the jury could not cure the defective verdict form because the verdict form did not require the jury to fulfill its constitutional responsibility to determine defendant's guilt or innocence. Neither could the polling of the jury cure the defective verdict where the trial court asked the jury members if the verdict was their individual verdict and the verdict to which the trial court referred did not "unambiguously state that defendant ha[d] been found *guilty* of a crime." *Hobson*, 70 N.C. App. at 620, 320 S.E.2d at 319 (emphasis added); *see also Sullivan*, 508 U.S. at 277, 124 L. Ed. 2d at 188 ("The right [to a jury trial] includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' "). Therefore, defendant is entitled to a new trial on each charge.

Because of our holding, we need not address defendant's remaining arguments.

NEW TRIAL.

Judges ELMORE and STEELMAN concur.