COLLINS, Judge.
Defendant Jonathan Stacey Berrier appeals from judgments entered upon jury verdicts of "responsible" for the misdemeanor crimes of operating a motor vehicle while license revoked and displaying a revoked driver's license. As the criminal judgments could only have been entered upon a jury's finding Defendant "guilty" of the crimes charged, we vacate the trial court's judgments and remand the case for a new trial on both charges.
I. Procedural History and Factual Background
Defendant was charged by North Carolina Uniform Citation on 18 May 2016 with (1) operating a motor vehicle on a street or highway at a speed of 74 mph in a 55 mph zone; (2) operating a motor vehicle while license revoked;[1] and (3) displaying a revoked driver's license.
Defendant appeared in district court on 6 June 2016, signed a waiver of his right to assistance of counsel, and proceeded pro se . On 1 February 2017, Defendant was convicted in district court on all three charges. Defendant appealed to superior court.[2] Defendant appeared in superior court on 15 March 2017, signed a second waiver of his right to assistance of counsel, and continued to proceed pro se . The case was called for trial on 29 August 2017.
During jury instructions, the trial court charged the jury on the elements of speeding in excess of 15 miles per hour over the speed limit, pursuant to pattern jury instruction N.C.P.I.-Crim. 270.0 (2017), and operating a vehicle while license revoked, pursuant to N.C.P.I.-Crim. 271.10 (2017). N.C.P.I.-Crim. 271.10 required the jury to find Defendant "guilty" or "not guilty" of operating a vehicle while license revoked. Finding no pattern jury instruction for displaying a revoked driver's license, the trial court used a modified pattern jury instruction N.C.P.I.-Crim. 271.44 (2017), which instructs on the infraction of displaying a revoked registration card. The instruction given required the jury to find Defendant "responsible" or "not responsible" of displaying a revoked driver's license.
The verdict form submitted to the jury for the driving while license revoked charge read in relevant part:
WE, THE JURY, UNANIMOUSLY FIND THEDEFENDANT, JONATHAN STACEY BERRIER....____ RESPONSIBLE OF DRIVING WHILE LICENSESUSPENDED
OR
____ NOT RESPONSIBLE
The jury returned the verdict form with a check mark next to the first option, RESPONSIBLE OF DRIVING WHILE LICENSE SUSPENDED, and signed and dated the form.
Similarly, the verdict form submitted to the jury for the displaying a revoked driver's license charge read:
WE, THE JURY, UNANIMOUSLY FIND THE DEFENDANT, JONATHAN STACEY BERRIER____ RESPONSIBLE OF DISPLAYING SUSPENDEDDRIVERS LICENSE
OR
____ NOT RESPONSIBLE
The jury returned the verdict form with a check mark next to the first option, RESPONSIBLE OF DISPLAYING SUSPENDED DRIVERS LICENSE, and signed and dated the form. Neither form contained an option for entering a verdict of guilty or not guilty. After reading the jury's verdicts, the jury was polled. The jury indicated that their unanimous verdicts were "responsible for driving while license suspended" and "responsible of displaying suspended [d]river's [l]icense."
After hearing from the State and Defendant regarding sentencing, the Court "order[ed] that unanimous verdict of the jury be recorded by the Clerk of Superior Court in Randolph County." The court arrested judgment on the speeding in excess of 15 miles an hour above the speed limit conviction, and then announced:
In Count Two: The defendant is found guilty of responsible of driving while license suspended. And in this matter, the Court finds the defendant, pursuant to the unanimous verdict, recorded verdict of the jury, guilty of responsible of driving while license suspended, Class 3 misdemeanor, and misdemeanor sentencing level 2.
....
In 16CRS704811, pursuant to the unanimous verdict of the jury, the defendant is found guilty of responsible of displaying a suspended driver's license, class -- I think that is a Class 3 -- Class 3 misdemeanor. And misdemeanor sentencing level 2.
The court then entered criminal judgments upon the jury's verdicts. On the driving while license revoked conviction, the trial court sentenced Defendant to 15 days in the custody of the Sheriff of Randolph County, suspended the sentence, and placed Defendant on 18 months supervised probation. The court ordered Defendant to pay $ 452.50 in costs and fined Defendant $ 500.00.[3] As a condition of probation, Defendant was immediately confined to the custody of the Sheriff of Randolph County for 48 hours and ordered to bear the cost of his incarceration.
On the displaying a revoked driver's license conviction, the trial court sentenced Defendant to 15 days in the custody of the Sheriff of Randolph County, suspended the sentence, and placed Defendant on 18 months supervised probation. The supervised probation periods run concurrently, but the 15-day confinement periods, if invoked, run consecutively. Defendant was ordered to pay $ 412.50 in costs.
From the judgments entered upon the jury's finding Defendant "responsible" of the driving while license revoked and displaying a revoked driver's license offenses, Defendant appeals.
II. Jurisdiction
As a threshold matter, we address our jurisdiction over this appeal. A party entitled by law to appeal from a judgment of superior court rendered in a criminal action may take appeal by giving oral notice of appeal at trial. N.C. R. App. P. 4(a)(1) (2017). "Oral notice of appeal must be given after the entry of judgment." State v. Miller , 246 N.C. App. 330, 334, 783 S.E.2d 512, 515 (2016), rev'd on other grounds , 369 N.C. 658, 800 S.E.2d 400 (2017) (citing N.C. Gen. Stat. § 15A-1444(a) (2015) ). Furthermore, a trial court's post-judgment acknowledgement of a defendant's pre-judgment oral notice of appeal does not cure a failure to give oral notice of appeal after entry of judgment. See State v. Robinson , 236 N.C. App. 446, 448, 763 S.E.2d 178, 179 (2014). "By failing to give timely notice of appeal, Defendant has lost his right of appeal." Id . (citing N.C. Gen. Stat. §§ 7A-27(b), 15A-1444(a) (2013) ).
At trial, Defendant gave oral notice of appeal in open court following the jury's verdict but failed to give notice of appeal following entry of the trial court's final judgment. After entry of judgment, the trial court acknowledged Defendant's pre-judgment oral notice and entered appellate entries on Defendant's behalf. On appeal, Defendant filed a petition for writ of certiorari asking this Court to review the merits of his appeal. A writ of certiorari may be issued by this Court to permit review of a trial court's judgment when the right to an appeal has been lost by failure to take timely action. N.C. R. App. P. 21(a)(1) (2017). In our discretion, we allow Defendant's petition.
III. Issues
On appeal, Defendant argues: (1) the trial court submitted, the jury returned, and the trial court accepted unconstitutional verdicts that did not require the jury to make an actual determination of guilt; (2) the trial court reversibly erred in failing to intervene ex mero motu when the prosecutor referenced Defendant's choice of a jury trial and failure to take responsibility for his crimes; and (3) the trial court reversibly erred by permitting Defendant to represent himself without first conducting the thorough inquiry required by N.C. Gen. Stat. § 15A-1242.
IV. Unconstitutional Verdicts
Defendant argues that his constitutional right to a jury trial was violated when the trial court submitted, the jury returned, and the trial court accepted unconstitutional verdicts that did not require the jury to make an actual determination of guilt. We agree.
A. Preservation
At the outset, we note that Defendant did not object at trial to the verdict forms. "Where, however, the error violates defendant's right to a trial by a jury of twelve, defendant's failure to object is not fatal to his right to raise the question on appeal." State v. Ashe , 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985) (citations omitted); see also State v. Wiggins , 161 N.C. App. 583, 592, 589 S.E.2d 402, 409 (2003) ("Violations of constitutional rights, such as the right to a unanimous verdict, however, are not waived by the failure to object at trial and may be raised for the first time on appeal."). Moreover, the issue of "whether the judgment is supported by the verdict" is deemed preserved for appellate review regardless of whether a party presented to the trial court a timely request, objection, or motion, and received a ruling thereupon. N.C. R. App. P. 10(a)(1) (2017).
B. Standard of Review
The standard of review for alleged violations of constitutional rights is de novo . State v. Graham , 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (citation omitted). Moreover, whether a verdict supports a judgment is a question of law, reviewed de novo on appeal. See State v. Douglas , 197 N.C. App. 215, 676 S.E.2d 620 (2009) (reviewing de novo whether unconstitutional special verdicts of "yes" returned by jury supported the judgment entered by trial court).
C. Analysis
The Uniform Driver's License Act, set out in Article 2, Chapter 20, of the General Statutes, governs the offenses with which Defendant was charged. See N.C. Gen. Stat. §§ 20-5 through 20-37.02 (2017). Under N.C. Gen. Stat. § 20-28(a), Driving While License Revoked, "any person whose driver[']s license has been revoked who drives any motor vehicle upon the highways of the State while the license is revoked is guilty of a Class 3 misdemeanor."[4] N.C. Gen. Stat. § 20-28(a) (2017). Under N.C. Gen. Stat. 20-30, it is unlawful for any person to display a driver's license, knowing the license has been revoked. N.C. Gen. Stat. § 20-30(1) (2017). An individual who knowingly displays a revoked driver's license is guilty of a Class 2 misdemeanor. See N.C. Gen. Stat. § 20-35(a) (2017) ("[A] violation of this Article is a Class 2 misdemeanor unless a statute in the Article sets a different punishment for the violation."). A misdemeanor is defined as any crime which is not a felony. N.C. Gen. Stat. § 14-1 (2017).[5]
N.C. Gen. Stat. § 20-35, which governs the penalties for violating Article 2, specifically classifies some violations as "infraction[s]" for which an individual could be "responsible."[6] N.C. Gen. Stat. § 20-35(a2) (2017). An infraction is defined as a noncriminal violation of law not punishable by imprisonment and, unless otherwise provided by law, not punishable by a penalty of more than $ 100.00. N.C. Gen. Stat. § 14-3.1 (2017). Under the Uniform Driver's License Act, the offenses of driving while license revoked and displaying a revoked driver's license are not infractions under Section 20-35(a2) (2017), but are misdemeanor crimes under N.C. Gen. Stat. § 20-28(a) and N.C. Gen. Stat. § 20-35(a).
A criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." U.S. v. Gaudin , 515 U.S. 506, 510 (1995). "The right [to a jury trial] includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' " Sullivan v. Louisiana , 508 U.S. 275, 277 (1993). "[T]he Sixth Amendment requires an actual jury finding of guilty." Id . at 280.
"A verdict is the unanimous decision made by the jury and reported to the court. It is a substantial right ...." State v. Hemphill , 273 N.C. 388, 389, 160 S.E.2d 53, 55 (1968) (internal citations omitted). A jury verdict in a criminal case must unambiguously state that the defendant has been found guilty of a crime. State v. Hobson , 70 N.C. App. 619, 620, 320 S.E.2d 319, 319 (1984). Criminal judgment may only be entered upon a determination that defendant was guilty of every element of the crime with which he is charged, beyond a reasonable doubt. Gaudin , 515 U.S. at 510.
In Douglas , this Court held the defendant's Sixth Amendment right to a jury trial was violated because the jury did not make an actual determination of the defendant's guilt. Douglas , 197 N.C. App. at 219-20, 676 S.E.2d at 624. "During jury instructions, the trial court charged the jury on the elements of possession with intent to sell or distribute cocaine and sale of cocaine pursuant to pattern jury instructions." Id . at 217, 676 S.E.2d at 622. The verdict form that was submitted to the jury read, in relevant part:
We, the jury, return as our unanimous verdict that thedefendant is:ISSUE 1:Did the defendant possess cocaine, a controlled substance,with the intent to sell or deliver it?
ANSWER: ___
...
ISSUE 3:Did [t]he defendant sell cocaine, a controlled substance, toOfficer Eugene Ramos?
ANSWER: ___
Id . "The jury wrote the word 'yes' in the blank beside the word 'ANSWER' for both Issues 1 and 3 on the verdict form and signed and dated the form." Id . at 217, 676 S.E.2d at 623. When polled, the jury indicated that it had reached unanimous verdicts of "yes" on Issues 1 and 3. Id. at 217-18, 676 S.E.2d at 623.
This Court concluded that because the verdict forms failed to include the words "guilty" or "not guilty," the jury did not reach an ultimate determination of the defendant's guilt. Id . at 220, 676 S.E.2d at 624. The trial court's charge to the jury could not cure the defective verdict forms because the verdict forms did not require the jury to fulfill its constitutional responsibility to determine the defendant's guilt or innocence. Id . Moreover, the polling of the jury could not "cure the defective verdict where the trial court asked the jury members if the verdict was their individual verdict and the verdict to which the trial court referred did not 'unambiguously state that defendant ha[d] been found guilty of a crime.' " Id . at 220, 676 S.E.2d at 623 (quoting Hobson , 70 N.C. App. at 620, 320 S.E.2d at 319 ).
The facts in Douglas are strikingly similar to the facts in the case before us. The verdict forms in this case failed to include the words "guilty" and "not guilty" and the jury did not make an actual finding of Defendant's guilt or innocence when it returned verdict forms indicating Defendant was "RESPONSIBLE" for the crimes. Also as in Douglas , the trial court's charge to the jury could not cure the defective verdict forms because the jury instruction on displaying a revoked driver's license incorrectly required the jury to find Defendant "responsible" or "not responsible" and the verdict forms did not require the jury to fulfill its constitutional responsibility to determine Defendant's guilt or innocence. Furthermore, as in Douglas , the polling of the jury could not cure the defective verdicts where the trial court asked the jury members if the verdicts were their individual verdicts and the verdicts to which the trial court referred did not unambiguously state that Defendant had been found guilty of a crime. Id . at 220, 676 S.E.2d at 623.
The State argues that throughout the course of the proceedings, the terms "responsible" and "guilty" were frequently used together and interchangeably, and that "[h]ere, 'responsible' or 'not responsible' might not be the preferred terms, but it meant the same thing as 'guilty' and 'not guilty' ...." Based on this premise, the State asserts this case is analogous to State v. Hicks , 86 N.C. App. 36, 356 S.E.2d 595 (1987), where the verdict form was not the "preferred" form, but "still required the jury to make an actual dispositive finding or conclusion on the charged crimes" because the form nevertheless required the jury to make an actual finding of guilt. We are not persuaded.
The State cites no legal authority to support its assertion that "responsible" and "guilty" can be used interchangeably and mean the same thing in the context of a criminal proceeding; and we find none. While responsible and guilty may have similar connotations in everyday parlance, as illustrated by the State's comparison of Webster's Dictionary definitions for the words, it is a fundamental principle that a defendant may only be convicted of and sentenced for a crime upon a determination of guilt . Douglas , 197 N.C. App. at 219, 676 S.E.2d at 624. The Uniform Driver's License Act reflects this principle by differentiating between infractions for which a defendant can be found "responsible" and crimes for which a defendant can be found "guilty." See N.C. Gen. Stat. § 20-35(a2).
Moreover, Hicks is distinguishable from the present case. In Hicks , the verdict form required the jury to determine whether the defendant was "Guilty of felonious conspiracy to commit felonious Breaking and Entering" and "Guilty of felonious Conspiracy to commit felonious Larceny." Hicks , 86 N.C. App. at 43, 356 S.E.2d at 599. The verdict form included the word "Guilty" but failed to include the words "not guilty." Id. This Court concluded, however, that the verdict form used and the trial court's instruction to the jury required the jury to make an actual and ultimate determination of the defendant's guilt. Id. After considering the trial court's instructions to the jury with respect to the permissible verdicts the jury could return, as well as each juror's affirmation when polled that the verdict of guilty was his or her verdict, this Court affirmed the conviction in Hicks despite the trial court's failure to include the words "not guilty" on the verdict form. Id.
Unlike the jury in Hicks , the jury in this case was not required to reach an ultimate determination regarding Defendant's guilt or innocence. Here, the verdict forms failed to include the words "guilty" or "not guilty" and, thus, failed to require the jury to fulfill its constitutional responsibility to determine Defendant's guilt or innocence. Moreover, unlike in Hicks , the polling of the jury in this case did not cure the defective verdicts where the trial court asked the jury members if the verdicts were their individual verdicts, and the verdicts to which the trial court referred did not state that Defendant had been found guilty of a crime. Hobson , 70 N.C. App. at 620, 320 S.E.2d at 319. The analysis in Hicks supports a conclusion that, as in Douglas , Defendant's Sixth Amendment right to a jury trial was violated.
Additionally, the right to a jury trial includes "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' " Sullivan , 508 U.S. at 277. In this case, after ordering the unanimous verdicts of the jury be recorded by the Clerk of Superior Court, the trial court announced, "the Court finds the defendant, pursuant to the unanimous verdict, recorded verdict of the jury, guilty of responsible of driving while license suspended, Class 3 misdemeanor" and "pursuant to the unanimous verdict of the jury, the defendant is found guilty of responsible of displaying a suspended driver's license, class -- I think that is a Class 3 -- Class 3 misdemeanor." As the judge was not permitted to reach the requisite finding of "guilty," and the jury did not reach an ultimate determination of Defendant's guilt, Defendant's convictions are vacated and Defendant is entitled to a new trial on each charge.
Because of our holding, we need not address Defendant's remaining arguments on self-representation or the prosecutor's closing arguments.
NEW TRIAL.
Report per Rule 30(e).
Judges TYSON and ZACHARY concur.

The terms "revoked" and "suspended" are both used in N.C. Gen. Stat. § 20-30(1), while N.C. Gen. Stat. § 20-28 uses the term "revoked." The pattern jury instructions use the term "revoked." The trial court used both terms, "revoked" and "suspended," to describe and reference Defendant's lack of a valid, current license.

The box in the "Court Use Only" section of the Uniform Citation indicating "defendant in open court gives notice of appeal to the Superior Court" was marked on the driving while license revoked citation but not marked on the displaying a revoked driver's license citation. The trial court's failure to mark the box does not prejudice Defendant or his appeal.

The trial court announced on the record it would amend the $ 500.00 fine to $ 200.00 upon the realization that a $ 500.00 fine was not permissible for a Class 3 misdemeanor. However, the record does not reflect that the $ 500.00 fine was actually reduced to $ 200.00.

The two exceptions listed in N.C. Gen. Stat. § 20-28(a) do not apply here.

"A felony is a crime which: (1) Was a felony at common law; (2) Is or may be punishable by death; (3) Is or may be punishable by imprisonment in the State's prison; or (4) Is denominated as a felony by statute." N.C. Gen. Stat. § 14-1.

A person who does any of the following is responsible for an infraction: (1) Fails to carry a valid license while driving a motor vehicle, in violation of N.C. Gen. Stat. § 20-7(a) ; (2) Operates a motor vehicle with an expired license, in violation of N.C. Gen. Stat. § 20-7(f) ; or (3) Fails to notify the Division of an address change for a driver's license within 60 days after the change occurs, in violation of N.C. Gen. Stat. § 20-7.1. N.C. Gen. Stat. § 20-35(a2).